UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JACOB NOCITA,<br><br>              Plaintiff,<br><br>   v.<br><br>HOUSING AUTHORITY OF GRAYS<br><br>HARBOR COUNTY,<br><br>              Defendant. | Case No. 3:24-cv-05771-TMC<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

Before the Court is defendant Grays Harbor County's ("the County") motion for summary judgment. Dkt. 30. For the reasons below, the County's motion is GRANTED.

## II.   BACKGROUND

**A.   Factual History**

The following facts are either undisputed or taken in the light most favorable to Mr. Nocita, the nonmoving party, based on a liberal construction of the evidence and arguments he has submitted to the Court.

*Pro se* plaintiff Jacob Nocita ("Mr. Nocita") and Nina Blanco ("Ms. Blanco") had three children. Dkt. 34 at 22. Mr. Nocita and his three children resided in housing provided by the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

1   Housing Authority of Grays Harbor County ("Housing Authority"). Dkt. 8 at 2. Ms. Blanco was
2   prohibited from residing there due to a domestic violence no-contact order protecting Mr. Nocita
3   from Ms. Blanco. Dkt. 41 at 57, 73, 79.

4       On May 5, 2020, Child Protective Services ("CPS") made a call to law enforcement to
5   conduct a welfare check of Mr. Nocita's home after "all attempts to contact [Mr.] Nocita to
6   check the welfare of the children have met with negative results." Dkt. 34 at 35. Law
7   enforcement responded to the call and arrested Ms. Blanco after finding her behind Mr. Nocita's
8   home in violation of the no contact order. *Id.*; Dkt. 41 at 78. After the arrest, law enforcement
9   entered Mr. Nocita's home and were not able to "locate [him and] the children." Dkt. 34 at 35.
10  On July 2, 2020, law enforcement visited Mr. Nocita's home again and Ms. Blanco was found
11  and arrested again for violating the same no contact order. *Id.* at 43; Dkt. 41 at 98–99. Mr. Nocita
12  asked the Housing Authority to relocate him and his children because of Ms. Blanco's repeated
13  visits. Dkt. 34 at 16. They were never relocated. Dkt. 41 at 27.

14      On July 24, 2020, CPS removed Mr. Nocita's three children from his home due to "a
15  series of domestic violence dispatches in which [Mr. Nocita] was the victim of abuse by [Ms.
16  Blanco]," and "several occasions" where one of the children would leave the home and wander
17  into the neighborhood asking for food from neighbors. Dkt. 34 at 22.

18      On October 10, 2024, the Housing Authority gave Mr. Nocita a notice of housing subsidy
19  termination for failure to "complete the annual reexamination packet and return" it to the
20  Housing Authority. *Id.* at 13. Mr. Nocita sought to maintain his housing through the Housing
21  Authority with a Violence Against Women Act ("VAWA") housing voucher. *Id.* at 8. Lisa
22  Strider, the Deputy Director of the Housing Authority asked Mr. Nocita to complete "annual
23  recertification paperwork" and to provide "available dates/times to meet." *Id.* Mr. Nocita did not
24

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

complete the paperwork, nor did he meet with the Housing Authority. *Id.* at 18. With no subsidy, Mr. Nocita was required to pay rent. *Id.* at 15.

B.      **Procedural History**

Mr. Nocita filed his initial complaint and requested leave to proceed *in forma pauperis* ("IFP") on September 13, 2024. Dkt. 1. The initial complaint named the Housing Authority as the sole defendant and alleged that the Housing Authority was negligent in their failure to relocate him and violated his rights under Violence Against Women Act ("VAWA") and the Fourth Amendment. Dkt. 1-1 at 4–5.

After reviewing the initial complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), Magistrate Judge David W. Christel found that it failed to state a claim on which relief may be granted. Dkt. 5 at 3. Judge Christel also noted that the Housing Authority "is not a legal entity capable of being sued under § 1983[1]," but the County is. *Id.* at 5. Mr. Nocita was given leave to correct his complaint and Judge Christel made no decision as to Mr. Nocita's IFP status. *Id.* at 6.

Mr. Nocita filed his second complaint on October 25, 2025. Dkt. 6. The second complaint named the County as the sole defendant. *Id.* at 1. Despite the new complaint not being "the model of clarity," Judge Christel found that the second complaint "stated a claim sufficient to warrant granting the IFP application." Dkt. 7. Mr. Nocita's ultimate and operative complaint was filed on November 15, 2024. Dkt. 10. The County was served the operative complaint by the United States Marshals on June 23, 2025. Dkt. 24.

The County filed the instant motion for summary judgment on August 7, 2025. Dkt. 30. Mr. Nocita filed his opposition on August 20, 2025. Dkt. 34. The County filed their reply on

---

[1] 42 U.S.C. § 1983 ("Section 1983").

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

September 4, 2025. Dkt. 36. With leave, Mr. Nocita filed a sur-reply on November 3, 2025. Dkt. 41.

### III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The evidence relied upon by the nonmoving party must be able to be "presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also* Fed. R. Ev. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presume[d]." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). However, "'[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). Consequently, "a District Court must resolve any factual issues of controversy in

favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan,* 497 U.S. at 888 (internal quotations omitted).

## IV.    DISCUSSION

"In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). While the operative complaint is not "the model of clarity," *see supra* Section II.B, the Court will attempt to liberally construe Mr. Nocita's pleadings to determine the scope of his claims before applying the summary judgment standard.

The Court construes Mr. Nocita's first claim as one made pursuant to Section 1983, under the theory of *Monell*,[2] alleging that the County violated his "rights under the Fourth and Fourteenth Amendments" when it "failed to properly investigate or act on multiple 911 calls reporting violent incidents, illustrating a pattern of inadequate response that allowed threats to the plaintiff's safety and security." Dkt. 10 at 2–3.

The Court construes Mr. Nocita's second claim as one made pursuant to Section 1983, under the theory of *Monell*, alleging that the Housing Authority's "failure to respond to repeated emergency relocation requests for the plaintiff and his children, despite the presence of documented domestic violence, constitutes a policy of deliberate indifference" to Mr. Nocita's rights under the "Fourth and Fourteenth Amendments." *Id.*

---

[2] *Monell v. Dep't of Soc. Services of the City of New York*, 436 U.S. 658 (1978). To establish liability for a governmental entity under the theory of *Monell*, a plaintiff must show that the governmental entity's "employees or agents acted pursuant to an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights." *Panagacos v. Towery*, 692 F. App'x 330, 333 (9th Cir. 2017).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

The Court construes Mr. Nocita's third claim as one made pursuant to Section 1983, alleging that the Housing Authority violated his rights under VAWA when they refused to "relocate [Mr. Nocita]" and "terminat[ed] . . . his housing subsidy without notice or cause, after years of harassment and stalking by other individuals, reflect[ing] a systemic practice of disregarding tenants' legal rights" under VAWA. *Id.*

The Court construes Mr. Nocita's fourth claim as a state law breach of contract claim, alleging that the Housing Authority "wrongful[ly] impos[ed] [] financial charges and debt exceeding $17,000 . . . despite the fact that [his] rent should have been calculated at 30% of his monthly income." *Id.* at 2.

The County moves for summary judgment on all claims. The Court will consider each claim in turn.

### A. The Court dismisses claim one, improper investigation, with prejudice because it is not a cognizable claim under Section 1983.

Mr. Nocita's first claim is that the County violated his "rights under the Fourth and Fourteenth Amendments" when the County "failed to properly investigate or act on multiple 911 calls reporting violent incidents, illustrating a pattern of inadequate response that allowed threats to the plaintiff's safety and security." Dkt. at 2–3.

The County makes two arguments for why the Court should dismiss Mr. Nocita's improper investigation claim. First, they argue that dismissal is proper because "[n]egligent investigation is not a claim." Dkt. 30 at 3–5. Second, "none of the exceptions [to the public duty doctrine] apply." *Id.* at 5.[3] In his response and sur-reply, Mr. Nocita does not address these arguments.

---

[3] The public duty doctrine applies to claims of negligence under Washington state law, which Mr. Nocita has not asserted. *See Norg v. City of Seattle*, 200 Wn.2d 749, 755–59 (2023).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

"[T]he Due Process Clauses [in the Fifth and Fourteenth Amendments] generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Due process is a limitation on state action rather than a "guarantee of certain minimal levels of safety and security." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (quoting *DeShaney*, 489 U.S. at 195). Accordingly, the Fourteenth Amendment typically "'does not impose a duty to protect individuals from third parties.'" *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011) (quoting *Morgan v. Gonzales*, 495 F.3d 1084, 1093 (9th Cir. 2007)). The "'general rule is that [a] state is not liable for its omissions.'" *Id.* at 971 (quoting *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000)). There are, however, two exceptions: (1) the special-relationship exception and (2) the state-created danger exception. *Id*. at 971–72.

"The special-relationship exception does not apply when a state fails to protect a person who is not in custody." *Id*. at 972. A state-created danger exists if there is "affirmative conduct on the part of the state in placing the plaintiff in danger" and "the state acts with 'deliberate indifference' to a 'known or obvious danger.'" *Patel*, 648 F.3d at 974 (quoting *Munger*, 227 F.3d at 1086); *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1996); *see also Wills v. City of Monterey*, 617 F. Supp. 3d 1107, 1123 (N.D. Cal. 2022) (citing *Martinez*, 943 F.3d at 1271). The government must have "affirmatively created an actual, particularized danger [the plaintiff] would not otherwise have faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063 (9th Cir. 2006). Examples of affirmative acts include a prison assigning a nurse to work alongside a dangerous sex offender despite assurances she would not need to work with such individuals, *see L.W.*, 974 F.2d 119, or police officers ejecting an intoxicated individual from a bar wearing only a T-shirt into below freezing temperatures where the individual died of hypothermia, *see*

*Munger*, 227 F.3d 1082.

Here, Mr. Nocita's Fourteenth Amendment claims against the County must be dismissed because he has not shown any evidence of a special relationship or affirmative government conduct that "created an actual, particularized danger" he "would not otherwise have faced." *Kennedy*, 439 F.3d at 1063. Without that type of evidence, his general claim for negligent investigation of the 911 calls is not cognizable under Section 1983. *See Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 769 (2005) ("[T]he framers of the Fourteenth Amendment and the Civil Rights Act of 1871, 17 Stat. 13 (the original source of § 1983), did not create a system by which police departments are generally held financially accountable for crimes that better policing might have prevented. . . .").

The County is therefore entitled to summary judgment as a matter of law and the Court DISMISSES claim one with prejudice.

### B.  The Court dismisses the remaining claims against the County because the County is not the proper defendant.

The County makes a single argument to support its motion for summary judgment on the remaining claims: that the Housing Authority is the correct defendant. Dkt. 30 at 3. In response, Mr. Nocita makes two arguments. First, he contends the County's argument "is contradicted by the Housing Authority's creation under state law, the County Commissioners' role in board appointments, the County's adoption of budgets and policy decisions, and official meeting minutes." Dkt. 34 at 1. Second, he argues that the "law of the case controls." Dkt. 41 at 1. More specifically, Mr. Nocita argues that when Judge Christel noted while reviewing his first complaint that the Housing Authority "is not a legal entity capable of being sued under § 1983," but the County is, this precluded any relitigating of the issue of proper defendant. *Id*. at 1 (citing

Dkt. 5 at 5). For the following reasons the Court grants the County's motion for summary judgment on claims two, three, and four.

First, when it comes to whether the County is liable for the Housing Authority's conduct, there is no genuine dispute as to any material facts. Mike McNickle, the Public Health Director at Grays Harbor County, testified that

> "[t]he Public Health Department works with independent agencies concerning issues of homeless housing in the County. The Housing Authority of Grays Harbor is an independent entity which is neither owned nor controlled by Grays Harbor County. The Housing Authority of Grays Harbor is not an agency or department of Grays Harbor County."

Dkt. 31 at 1. Attached to Mr. Nocita's opposition brief are the minutes of a meeting of the "Board of Commissioners – Grays Harbor County" from August 6, 2025. Dkt. 34 at 72. Mr. Nocita describes it as "County Meeting Minutes and Housing Authority Organizational Chart." *Id.* at 3. It does not provide any evidence to contradict McNickle's testimony.

Second, the law of the case doctrine does not apply. "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). Contrary to Mr. Nocita's argument, "the district court's power to reconsider or revise prior orders is limited by the law of the case doctrine only where the court has been divested of jurisdiction over the matter or has unduly delayed reconsideration." *Taylor v. Kahne Corp.*, No. C05-0243L, 2006 WL 1587442, at *1 (W.D. Wash. June 5, 2006).

Although Judge Christel ruled that the Housing Authority was not the appropriate defendant for Section 1983 claims, the Housing Authority is a "public body corporate and politic, exercising public and essential governmental functions," that can "sue and be sued." RCW 35.82.070(1). The Housing Authority is a municipal corporation. *See State v. Hous. Auth. of King Cnty.*, 13 Wn. App. 2d 1116, 2020 WL 3579808, at *1 (2020) (unpublished); *see also King Cnty. Fire Prot. Districts No. 16, No. 36 & No. 40 v. Hous. Auth. of King Cnty.*, 123 Wn.2d 819, 827, 872 P.2d 516, 520 (1994). A plaintiff "may assert a claim [against a housing authority] for violations of . . . their rights pursuant to § 1983." *McIntire v. Hous. Auth. of Snohomish Cnty.*, 731 F. Supp. 3d 1212, 1223 (W.D. Wash. 2024).

With no genuine dispute as to the material facts for the remaining claims, the County is entitled to summary judgment as a matter of law. Accordingly, the Court DISMISSES claims two, three, and four against the County with prejudice.

But counts two, three, and four could still be pursued against the Housing Authority. The Court recognizes that Mr. Nocita's original complaint named the proper defendant, despite the Magistrate Judge's ruling. The Court regrets the delay caused to Mr. Nocita and the inconvenience caused to the County by this error. The Court finds good cause to amend the case schedule and allow Mr. Nocita leave to amend his complaint to name the Housing Authority, if he wishes to continue pursuing his claims. The Court will also assist Mr. Nocita with service again if he requests. *See* Fed. R. Civ. P. 4(c)(3).

## V. CONCLUSION

For the reasons explained above, the County's motion for summary judgment (Dkt. 30) is GRANTED. All claims against Grays Harbor County are DISMISSED WITH PREJUDICE.

Additionally, with all claims against the County dismissed, Mr. Nocita's motion to compel against the County (Dkt. 45) is DENIED as MOOT.

The Court will grant leave to Mr. Nocita to amend his complaint to assert claims against the Housing Authority. Mr. Nocita must file his amended complaint no later than December 31, 2025. Mr. Nocita shall also inform the Court whether he requests assistance with service and provide an address where the Housing Authority can be served.

The Clerk is respectfully requested to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 3rd day of December, 2025.

Tiffany M. Cartwright
United States District Judge